1  STEVE W. BERMAN (*pro hac vice*)
   steve@hbsslaw.com
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1918 Eighth Avenue, Suite 3300
3  Seattle, WA 98101
   Telephone:  (206) 623-7292
4  Facsimile:  (206) 623-0594

5  MARTIS ANN ALEX (SBN 77903)
   malex@labaton.com
6  DANIEL R. LEATHERS (*pro hac vice*)
   dleathers@labaton.com
7  BRIAN R. MORRISON (*pro hac vice*)
   bmorrison@labaton.com
8  LABATON SUCHAROW LLP
   140 Broadway
9  New York, NY 10005
   Telephone:  (212) 907-0700
10 Facsimile:  (212) 818-0477

11 *Attorneys for Plaintiffs*

12 [Additional Counsel on Signature Page]

13

14                **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16                    **WESTERN DIVISION**

| | |
|---|---|
| 17 DANIEL CHESLER, MATTHEW KANG, CHRISTINE AND NICHOLAS MESSINA, and JANINE LOVUOLO, on behalf of themselves and those similarly situated, | No. 8:15-cv-01988-AB-MRW |
| 18 | **PLAINTIFFS' OPPOSITION TO DEFENDANT HYUNDAI MOTOR AMERICA, INC.'S MOTION TO DISMISS** |
| 19 | |
| 20                              Plaintiffs, | Date:    June 27, 2016 |
| 21        v. | Time:    10:00 a.m.<br>Place:    Courtroom 4 |
| 22 HYUNDAI MOTOR AMERICA, INC. and KIA MOTORS AMERICA, INC., | Judge:   Hon. André Birotte Jr. |
| 23                              Defendants. | |

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   BACKGROUND .................................................................................. 3

III.  ARGUMENT ...................................................................................... 6

    A.   Legal Standard .......................................................................... 6

    B.   Hyundai's Argument Concerning Other Affected Vehicles Is
        Flawed and Is More Properly Addressed on a Motion for Class
        Certification .............................................................................. 7

    C.   Plaintiff's Claim for Unjust Enrichment is Properly Pled in the
        Alternative Under California Law .............................................. 9

    D.   Hyundai's Purported "Disclosures" About the "Start/Stop" Button
        or Fob Signals Have No Bearing on Plaintiff's Claims for
        Consumer Protection Law Violations or Fraud ......................... 9

        1.   The cited Owner's Manuals are not subject to judicial notice
            or incorporation by reference ......................................... 10

        2.   The cited manuals and signals do not constitute adequate
            "disclosures" as a matter of law. ................................... 12

    E.   Plaintiff's FAC Satisfies Federal Rule of Civil Procedure 9(b) ........... 12

        1.   Plaintiff adequately pleads the circumstances of Hyundai's
            omissions with specificity ............................................. 12

        2.   Plaintiff includes specific allegations against Hyundai
            consistent with Rule 9(b). ............................................. 13

        3.   The FAC adequately alleges how and why Hyundai's
            omissions are likely to mislead reasonable consumers. .............. 14

        4.   The FAC properly pleads a duty to disclose. ................. 16

    F.   Plaintiff Adequately Alleges that Hyundai Omitted Material Facts
        and Breached Its Duty to Disclose a Safety Defect .............................. 17

        1.   Hyundai has a duty to disclose the Defect because it poses an
            unreasonable safety risk. ............................................... 17

        2.   Hyundai also has a duty to disclose the lack of Auto-Off
            based on its exclusive knowledge thereof (*i.e.*, Hyundai is in
            a superior position to know about the Defect and the safety
            concerns associated with it). ......................................... 20

IV.   CONCLUSION .................................................................................. 22

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*In re Adobe Sys., Inc. Privacy Litig.*,

5
    66 F. Supp. 3d 1197 (N.D. Cal. 2014)....................................................................22

6

*Apodaca v. Whirlpool Corp.*,

7
    2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ...................................................15, 19

8

*Asghari v. Volkswagen Grp. of Am., Inc.*,

9
    42 F. Supp. 3d 1306 (C.D. Cal. 2013)....................................................13, 16, 17, 21

10

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,

11
    2012 WL 2990766 (N.D. Cal. July 20, 2012) .....................................................8, 9

12

*Astiana v. Hain Celestial Grp., Inc.*,

13
    783 F.3d 753 (9th Cir. 2015) ...............................................................................9

14

*Azco Biotech Inc. v. Qiagen, N.V.*,
    2013 WL 4500782 (S.D. Cal. Aug. 20, 2013).........................................................10

15

*Bruno v. Quten Research Inst., LLC*,

16
    280 F.R.D. 524 (C.D. Cal. 2011)...........................................................................8

17

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,

18
    2011 WL 159380 (N.D. Cal. Jan. 10, 2011) .......................................................7, 8

19

*Clancy v. Bromley Tea Co.*,

20
    308 F.R.D. 564 (N.D. Cal. 2013) ..........................................................................7

21

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ...............................................................................15

22

*Contreras v. Johnson & Johnson Consumer Cos., Inc.*,

23
    2012 WL 12096581 (C.D. Cal. Nov. 29, 2012) ......................................................8

24

*Coto Settlement v. Eisenberg*,

25
    593 F.3d 1031 (9th Cir. 2010) ..............................................................................11

26

*Cuviello v. City & Cty. of San Francisco*,

27
    940 F. Supp. 2d 1071 (N.D. Cal. 2013)...................................................................6

28

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ................................................................. 17

*Decker v. Mazda Motor of Am., Inc.*,
   2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ....................................... 15

*Dysthe v. Basic Research LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011) ......................................... 8

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................. 17

*Eisen v. Porsche Cars N. Am., Inc.*,
   2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ......................................... 18

*Elias v. Hewlett-Packard Co.*,
   2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ..................................... 20, 21

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ................................................ 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................... 7

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................... *passim*

*Fields v. Wise Media, LLC*,
   2013 WL 3187414 (N.D. Cal. June 21, 2013) ...................................... 14

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................................. 11

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .................................................................. 12

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................................ 10

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ......................................... 22

*Grodzitsky v. American Honda Motor Co., Inc.*,
   2013 WL 2631326 (C.D. Cal. June 12, 2013) ........................................ 7

*Herremans v. BMW of N. Am., LLC*,
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ........................................................16

*Hofmann v. Fifth Generation, Inc.*,
    2015 WL 5440330 (S.D. Cal. Mar. 18, 2015).....................................................21

*Hovsepian v. Apple, Inc.*,
    2009 WL 2591445 (N.D. Cal. Aug. 21, 2009)......................................................9

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012)........................................................................20

*Kearney v. Hyundai Motor Am.*,
    2010 WL 8251077 (C.D. Cal. Dec. 17, 2010)....................................14, 16, 17, 18

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012)..........................................................13, 17

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012)........................................................................15

*Kelley v. Crosfield Catalysts*,
    135 F.3d 1202 (7th Cir. 1998) ............................................................................12

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015)................................................................9

*Loumena v. Kennedy*,
    2015 WL 5963988 (N.D. Cal. Oct. 13, 2015) .....................................................10

*Marsikian v. Mercedes Benz USA, LLC*,
    2009 WL 8379784 (C.D. Cal. May 4, 2009)...........................................18, 19, 20

*Missud v. Oakland Coliseum Joint Venture*,
    2013 WL 812428 (N.D. Cal. Mar. 5, 2013) ........................................................11

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014)............................................................20, 21

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th
    Cir. 2009).............................................................................................................15

*Peel v. BrooksAmerica Mortg. Corp.*,
   788 F. Supp. 2d 1149 (C.D. Cal. 2011) ............................................................ 12, 14

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th
   Cir. 2011) ........................................................................................................ 18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................................... 7

*Swanson v. U.S. Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) .............................................................................. 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................. 6, 16, 21

*Trazo v. Nestlé USA, Inc.*,
   113 F. Supp. 3d 1047 (N.D. Cal. 2015) ............................................................ 9

*Turnacliff v. Westly*,
   546 F.3d 1113 (9th Cir. 2008) .......................................................................... 10

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................ 11

*United States v. Zuno-Arce*,
   25 F. Supp. 2d 1087 (C.D. Cal. 1998) .............................................................. 8

*Williams v. Cty. of Alameda*,
   26 F. Supp. 3d 925 (N.D. Cal. 2014) .......................................................... 12, 19

*Williams v. Yamaha Motor Corp., U.S.A.*,
   106 F. Supp. 3d 1101 (C.D. Cal. 2015) ............................................................ 19

*Willis v. Buffalo Pumps, Inc.*,
   34 F. Supp. 3d 1117 (S.D. Cal. 2014) .............................................................. 17

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ............................................................................ 6

# I.   INTRODUCTION

In the past several years alone, at least fourteen people have died and many more have sustained life-threatening injuries after parking their Keyless Fob-equipped cars in their garages.  Because those vehicles were not equipped with an automatic engine shutoff to ensure that the vehicle's engine did not continue to emit deadly carbon monoxide long after the car was parked ("Auto-Off"), innocent drivers, families, and bystanders suffered from carbon monoxide poisoning.  Not one of those deaths or injuries would have occurred if the cars had been equipped with Auto-Off.

Unlike with traditional physical keys, where a driver is assured that the engine must be off if she parks the car and walks away with the key in hand, Keyless Fobs have nothing to do with shutting off the engine.  Consequently, unlike with traditional keys, drivers can and do park their cars and walk away with the Keyless Fob in hand, not realizing that the engine is still running and emitting deadly carbon monoxide. The life-threatening consequences of Keyless Fob systems designed without Auto-Off are amplified by the modern-day quiet engine technology that renders vehicles nearly silent even when the engine is turned on.

As detailed in Plaintiffs' First Amended Class Action Complaint (the "FAC" or "Complaint"), Defendant Hyundai Motor America, Inc. ("Hyundai") knew about the serious safety risks associated with a *Keyless Fob system that lacks Auto-Off* (the "Defect"), and knew that people were being killed and injured.  But Hyundai chose not to fix the Defect or to disclose its existence to consumers.  Plaintiff Daniel Chesler ("Plaintiff") alleges that he leased a Keyless Fob vehicle from Hyundai that he otherwise would not have leased, or paid more for it than he otherwise would have paid, if Hyundai had disclosed the Defect.  He brings various state law claims seeking economic damages for his overpayment, as well as injunctive relief to stop Hyundai's ongoing deceptive marketing, to remedy the dangerous Defect, and to notify class

members about the defective nature of their vehicles.[1]

Now, in its Motion to Dismiss, Hyundai disavows any responsibility for its non-disclosure of this serious safety Defect, and seeks to shift the blame to consumers, characterizing Plaintiff's claim as a "mundane example of driver forgetfulness." Hyundai argues that Plaintiff cannot assert claims relating to other affected Hyundai models that have the same safety Defect but that Plaintiff himself did not purchase or lease. Furthermore, Hyundai argues that unjust enrichment is not a stand-alone claim, and that the Owner's Manuals disclose the defective nature of the vehicles. Further still, Hyundai argues that Plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and in any event, that Hyundai had no duty to disclose the Defect. Hyundai's brief, which largely relies on Hyundai's skewed version of the factual allegations, fails as a matter of law.

*First*, Hyundai's argument that Plaintiff cannot assert claims relating to other defective Hyundai vehicles lacks merit and is inappropriate for a motion to dismiss. Binding decisions from California federal courts make clear that this argument is better suited for the class certification stage because the appropriate question is whether a plaintiff can adequately represent unnamed class members who purchased similar products suffering from the same Defect. Because Plaintiff alleges that each of Hyundai's Affected Vehicles suffer from the same Defect, the Court should reject Hyundai's argument as premature.

*Second*, Ninth Circuit law is now clear that an unjust enrichment claim may be pled in the alternative to other claims.

*Third*, Plaintiff does not allege that he received or relied on the Hyundai Owner's Manual before leasing his vehicle, so the manual is of no consequence to his claims here. Equally important, the Owner's Manual is not properly considered on a

---

[1] Plaintiff Matthew Kang has withdrawn from this litigation and is no longer a putative class representative. *See* Dkt. No. 38.

motion to dismiss, and regardless, it simply does not disclose the Defect.  At most, the manual introduces a factual dispute that cannot be resolved at the pleadings stage.

*Fourth*, Plaintiff pleads his omission-based claims with specificity under Rule 9(b).  He identifies the circumstances constituting fraud such that Hyundai can prepare an adequate answer.  Among other things, he describes the defective nature of the Keyless Fob ignition system, identifies the relevant time frame for the introduction of the Affected Vehicles and the challenged omission, and carefully details Hyundai's failure to disclose the dangerous Defect in its pre-sale materials.

*Finally*, Plaintiff adequately alleges that Hyundai had a duty to disclose the lack of Auto-Off and related safety risk.  The duty to disclose exists here because the lack of Auto-Off poses a genuine safety risk and because Hyundai had exclusive or superior knowledge of the Defect.

For these reasons and others described more fully below, the Court should deny Hyundai's motion in its entirety.

## II.     BACKGROUND

Keyless Fobs are marketed as the ultimate driving convenience.  Drivers can keep the Keyless Fobs in their pockets or bags and can start the car by pressing a button on the dashboard without having to fumble for a traditional physical key.  *See* ¶ 2.[2]  On cold or rainy days, Keyless Fobs are a convenience for drivers who wish to quickly enter the vehicle.  *Id.*

However, this convenience has resulted in deadly consequences.  Reasonable drivers, including Plaintiff, can misunderstand the role of the Keyless Fob in turning off the vehicle.  With traditional physical keys, once a driver removed the key from the ignition switch, the engine could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the vehicle, the engine was off.  But Keyless Fobs operate very differently.  Unlike with traditional keys, the Keyless Fob has nothing to do with

---

[2] Except where otherwise noted, references to "¶__" are to paragraphs in the First Amended Class Action Complaint (Dkt. No. 21).

turning off the engine.  ¶ 6.  Engines no longer turn off simply because the car is parked and the Keyless Fob is removed from the vehicle.  *Id.*  For Plaintiff's vehicle, as with the Affected Vehicles listed in Exhibit 1 to the Complaint, the driver can stop the vehicle, put it in park, and exit with the Keyless Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running.  *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money.  ¶ 8.  In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the vehicle price.  In either case, Plaintiff and other consumers pay additional money for the Keyless Fobs.  *Id.*  But this added convenience comes with a dangerous safety risk because Hyundai has failed to institute Auto-Off on the Affected Vehicles.  ¶ 12.

Tragically, as detailed in Plaintiffs' Complaint, many drivers have not been fortunate enough to return to their cars to find the engines still running – instead, they were exposed to deadly levels of carbon monoxide that seeped into their homes after the engine continued to run in the garage.  Many families have been affected by carbon monoxide poisoning even in just the past six months:

A young mother parked her car in the garage and was awakened in the middle of the night by her thirteen-month-old son screaming.  She and her son would have died from carbon monoxide poisoning had they stayed in their house just twenty minutes longer.  ¶ 18.

A father in Issaquah, Washington, parked the family minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning.  The seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber, and three of the responding firefighters also required medical attention.  ¶ 18.

A college professor in Queens, New York, parked her car in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning.  Her partner was dead.  ¶ 21.

These and many other tragedies were caused by carbon monoxide poisoning from cars equipped with a Keyless Fob.  Unfortunately, these are not isolated stories.  The Complaint details *at least* fourteen wholly avoidable deaths and many more serious injuries – all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had Auto-Off.  ¶ 17.[3]

Since the time that Hyundai first marketed the Affected Vehicles, and at the time Plaintiff leased an Affected Vehicle, the Keyless Fob system lacked Auto-Off and posed a serious risk of carbon monoxide poisoning.  ¶ 184.  At the same time, Hyundai was in a superior position to know about the lack of Auto-Off in its Affected Vehicles and the unreasonable safety hazard created by the lack of Auto-Off.  ¶¶ 183-84.  As alleged in the Complaint, Hyundai's exclusive or superior knowledge of the Defect arises through a variety of sources that include select news reports, recalls, patent applications, personal injury lawsuit filings, NHTSA complaints, non-binding NHTSA proposals, and Hyundai's partial implementation of Auto-Off.  ¶¶ 134-81.  In fact, Hyundai installed an automatic shut-off system for many of its remote-start vehicles to shut off the engine if the vehicle is left running in pre-start mode in order to limit deadly carbon monoxide emissions.  ¶¶ 175-81.[4]  Hyundai failed to disclose the lack of Auto-Off and related safety risk to consumers, inducing consumers to purchase or lease one of the Affected Vehicles and to pay a premium price in the process.  ¶ 184.

---

[3] Plaintiff's counsel have learned of at least five more deaths since filing the initial Class Action Complaint in November 2015, bringing the total number of avoidable deaths to nineteen.  If the Court requests or requires further allegations about the safety hazard posed by the Defect, Plaintiff's counsel could and would detail the circumstances of these additional deaths.

[4] In a remote-start vehicle, a driver can use an electronic fob to start the engine remotely to warm or cool the vehicle before entering.

1
2
3
4
5
6
7
8
9

On or around January 6, 2014, Plaintiff leased a 2015 Hyundai Sonata, not knowing that his vehicle lacked Auto-Off.  ¶ 41.  Prior to leasing the vehicle, he reviewed the vehicle's sales brochure.  ¶ 46.  None of those pre-sale materials warned him that his vehicle lacked Auto-Off or that the lack of Auto-Off poses a serious safety risk.  ¶ 47.  Although Plaintiff has been fortunate enough not to suffer carbon monoxide poisoning, he nevertheless has experienced the Defect – he has parked his vehicle, removed the Keyless Fob, walked away, and later discovered the vehicle's engine was still running.  ¶ 49.  Plaintiff would not have leased or would have paid less for the vehicle had he known about the lack of Auto-Off.  ¶ 54.

10

### III.   ARGUMENT

11

#### A.   Legal Standard

12
13
14
15
16
17
18
19
20
21

Hyundai's Motion to Dismiss the Complaint fails as a matter of law, and the Court should deny the motion in its entirety.  A motion to dismiss challenges the legal sufficiency of the claims alleged.  While the complaint must plead enough facts to render the claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).[5]  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

22
23
24
25
26

Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent omission claims asserted by Plaintiff "can succeed without the same level of specificity required by a normal fraud claim."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* ("*Unintended Acceleration MDL*"), 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (Rule 9(b) requirements relaxed

27
28

[5] Unless otherwise indicated, all internal citations and quotation marks are omitted.

for fraudulent omission claims "because '[r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission'") (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009)).

As explained more fully below, Plaintiff has alleged sufficient factual allegations that "plausibly suggest an entitlement to relief."  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[6]

## B. Hyundai's Argument Concerning Other Affected Vehicles Is Flawed and Is More Properly Addressed on a Motion for Class Certification

Hyundai argues that the Complaint must be dismissed as to all Hyundai Affected Vehicles other than the one Plaintiff leased, though Plaintiff alleges that each vehicle suffers from precisely the same Defect.  ¶ 6.  The case law does not support Hyundai.  In fact, the Court rejected the same argument advanced here just three years ago in a vehicle defect class action.  In *Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 2631326, at *4 (C.D. Cal. June 12, 2013), the defendant argued that the plaintiffs lacked standing "to sue over products they did not purchase" where the plaintiffs sought to represent unnamed class members who purchased or leased different vehicle models suffering from the same defective window regulators.  The Court disagreed, concluding that the argument was "ill-suited to a motion to dismiss," and explaining that it was better suited for the class certification stage.  *Id.*

The weight of authority confirms that Hyundai's argument is premature, particularly when the Affected Vehicles each suffer from the same Defect.  *See Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 569-71 (N.D. Cal. 2013) (rejecting *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), and

---

[6] Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2).  Plaintiffs respectfully request leave to amend if necessary.

concluding that "[d]eciding at the pleading stage that a plaintiff cannot represent a class who purchased any different products than the plaintiff seems unwarranted"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."). Other California federal courts have also explained that, so long as there is "sufficient similarity between the products [the named plaintiffs] did purchase and those that they did not," the argument is better addressed at the class certification stage. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (refusing to follow reasoning of *Dysthe v. Basic Research LLC*, 2011 WL 5868307 (C.D. Cal. June 13, 2011), and finding that even though food products at issue may have different ingredients, plaintiffs challenged "the same basic mislabeling practice across different product flavors").[7] Undeniably, the Keyless Fob system on each Affected Vehicle is substantially similar, if not identical, and Plaintiff challenges the same omissions regardless of the vehicle model.

As a result, at the pleadings stage, this Court should reject Hyundai's motion to dismiss other Affected Vehicle models from this case.[8]

_____

[7] Hyundai relies on *Carrea* and *Dysthe*, both of which have been more recently discredited by California federal courts, as described above. Hyundai's reliance on *Contreras v. Johnson & Johnson Consumer Cos., Inc.*, 2012 WL 12096581 (C.D. Cal. Nov. 29, 2012), goes against the weight of authority on this issue in California federal courts, and has only been cited by one decision in the Southern District of Florida.

[8] In a footnote, Hyundai references Article III standing arguments advanced by other defendants – Nissan and Kia – without citing to any case law or articulating its own argument. *See* Motion to Dismiss ("MTD") at 8 n.6. The Ninth Circuit and other courts have expressly rejected this tactic. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996) (holding that the trial court properly struck party's incorporations where party "incorporated by reference 69 additional pages of argument" in its brief, and upholding sanctions); *United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal. 1998) (rejecting defendant's "attempts to incorporate by reference co-defendant['s] submission on this issue"). Hyundai's footnoted attempt to skirt page limits should therefore be ignored.

**C.     Plaintiff's Claim for Unjust Enrichment is Properly Pled in the Alternative Under California Law**

The Ninth Circuit recently held that a claim for unjust enrichment under California law should not be dismissed just because it is not a "standalone cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other statutory or tort claims." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015); *cf. Hovsepian v. Apple, Inc.*, 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) (decided before *Astiana*). Because the Ninth Circuit is clear on this issue, and because the Federal Rules of Civil Procedure allow for pleading in the alternative, *see* Fed. R. Civ. P. 8(d)(2), the Court should permit Plaintiff's claim for unjust enrichment to proceed.[9]

**D.     Hyundai's Purported "Disclosures" About the "Start/Stop" Button or Fob Signals Have No Bearing on Plaintiff's Claims for Consumer Protection Law Violations or Fraud**

At the outset, Hyundai builds up and tears down a straw-man argument. *First*, Hyundai posits that Plaintiff is claiming to be unaware of how the "Start/Stop" button works on Affected Vehicles. MTD at 9-10. *Then*, Hyundai attacks the imagined claims. But in reality, Plaintiff never made such claims. Of course he is aware that pushing the "Start/Stop" button can stop the vehicle's engine. That simply does not inform anyone about what happens after the Keyless Fob is removed from the vehicle while the engine is still running. All Keyless Fob vehicles have "Start/Stop" buttons.

_____

[9] Hyundai's reliance on *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1176 (N.D. Cal. 2015), is misleading. In *Lidoderm*, the court explained that the plaintiffs had failed to present "any newly decided authority on the issue" of whether unjust enrichment could be pled in the alternative and therefore sustained its dismissal of that claim. *Id.* However, at the time the plaintiffs in *Lidoderm* submitted their opposition to the defendants' motion to dismiss, *Astiana* had not yet been decided and therefore was not cited or relied upon by the parties or the court. *See* Pl.'s Opp'n to Mot. to Dismiss at 23-24 (Dkt. No. 146), *In re Lidoderm Antitrust Litig.*, No. 14-md-2521-WHO (N.D. Cal. Mar. 2, 2015).

1    Some have Auto-Off, but the Affected Vehicles do not.[10]

2        **1.    The cited Owner's Manuals are not subject to judicial notice or**
3            **incorporation by reference.**

4        Hyundai maintains that the cited Owner's Manuals are properly before the

5    Court because:  (i) the Court may take judicial notice of them; or (ii) the FAC

6    incorporates them by reference.  MTD at 10.  As set forth in Plaintiff's concurrently-

7    filed Opposition to Hyundai's Request for Judicial Notice, and as set forth below, the

8    cited materials are *not* the proper subject of judicial notice and they are *not*

9    incorporated by reference.

10       Regarding judicial notice, Hyundai fails to show that the cited materials come

11   from "sources whose accuracy cannot reasonably be questioned" (as required under

12   Fed R. Evid. 201(b)), particularly since Hyundai does not qualify as such a source.

13   *See Loumena v. Kennedy*, 2015 WL 5963988, at *8 (N.D. Cal. Oct. 13, 2015) (a party

14   with an interest in the outcome of a case "is not a source whose accuracy cannot

15   reasonably be questioned"); *see also Turnacliff v. Westly*, 546 F.3d 1113, 1120 (9th

16   Cir. 2008).  Likewise, Hyundai fails to show that the manuals come from some

17   independent public source whose accuracy cannot reasonably be questioned.[11]  *See*

18   *Azco Biotech Inc. v. Qiagen, N.V.*, 2013 WL 4500782, at *3 (S.D. Cal. Aug. 20, 2013)

19   (finding that party websites generally "are not the sorts of sources whose accuracy

20   cannot reasonably be questioned"); *see also Gerritsen v. Warner Bros. Entm't Inc.*,

21   112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (same).  Unlike in the cases relied on

22   by Hyundai, Plaintiff here does not allege claims based on the cited Owner's Manual

23   and he objects to the request for judicial notice.

24   _____

25       [10]  Consider remote-start vehicles.  They too have a "Start/Stop" button.  If the
26   remotely started engine is left running, the vehicle will shut off automatically after a
     predetermined period of time.

27       [11]  One of the websites referenced by Hyundai hosts Canadian car manuals, and the
     other referenced website claims to house over 78,000 car manuals, most of which are
28   in the Chinese language.  *See* Dkt. No. 34-5, at 2 (citing to "cdn.dealereprocess.com"
     and "carmanuals2.com").

1      Moreover, district courts should not incorporate a document by reference unless
2   it is *"integral"* to the operative complaint and "there are no disputed issues as to the
3   document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.
4   2010). "[T]he mere mention of the existence of a document is insufficient to
5   incorporate the contents of a document." *Id.*; *see also United States v. Ritchie*, 342
6   F.3d 903, 908-09 (9th Cir. 2003). Incorporation by reference is particularly
7   inappropriate in a deceptive marketing case where the plaintiffs have not alleged that
8   they were misled by the documents at issue, or even saw the documents, prior to
9   purchasing the product. *See Missud v. Oakland Coliseum Joint Venture*, 2013 WL
10  812428, at *11 (N.D. Cal. Mar. 5, 2013).

11      The cited Owner's Manuals are not "pre-sale" materials, and Hyundai would be
12  hard pressed to contend otherwise (*i.e.*, a typical purchaser does not review an *owner's*
13  manual before purchasing a vehicle). Plaintiff does not refer to Owner's Manuals in
14  the FAC at all, much less *extensively*. The cited manuals are simply *not integral* to
15  Plaintiff's claims, since Plaintiff does not allege that he was misled by the Owner's
16  Manual or even exposed to it before leasing an Affected Vehicle. Hyundai's argument
17  that it generally allows dealerships to make manuals available to potential consumers
18  does not undermine this point. *See id.*; *see also Fraley v. Facebook, Inc.*, 830 F. Supp.
19  2d 785, 795 (N.D. Cal. 2011) (rejecting incorporation by reference of certain Help
20  Center pages on Facebook since "it does not follow that a member would necessarily
21  see the other Help Center pages Facebook submits"). In fact, Plaintiff disputes that
22  the cited manuals are relevant at all. Consequently, the Complaint does not
23  *necessarily rely* on the manuals, and the Court should not consider them on a motion
24  to dismiss.

25      In Hyundai's view, the Complaint incorporates *every document in the world* in
26  which Hyundai believes there could be some sort of a purported disclosure. MTD at
27  11-12. Surely it overshoots the mark. At this juncture, the relevant sources of
28  disclosure are limited to pre-sale marketing materials to which Plaintiff was exposed;

the cited Owner's Manual is not among those materials.[12]

### 2. The cited manuals and signals do not constitute adequate "disclosures" as a matter of law.

Where plaintiffs are given full and fair disclosure of all material facts in advance of a disputed transaction, that disclosure may preclude claims based on omission of those same facts under California's consumer protection statutes or common law fraud. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995). But this common sense principle is of no help to Hyundai here because (as discussed above) the cited Owner's Manual is not the proper subject of this motion to dismiss, it is not a pre-sale disclosure, and fundamentally, it does not disclose the lack of Auto-Off or the associated safety risk.

### E. Plaintiff's FAC Satisfies Federal Rule of Civil Procedure 9(b)

#### 1. Plaintiff adequately pleads the circumstances of Hyundai's omissions with specificity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Omissions need not be pled with the same degree of specificity. *See Falk v. General Motors Corp.,* 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (time, place, and content of omissions need not be pled with same specificity as affirmative misrepresentations); *see also Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d

---

[12] Hyundai relies on allegations from the original *Lassen* complaint that are *not included* in the First Amended Complaint (here or in *Lassen*). MTD at 11. "However, it is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading." *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014) (refusing to consider facts cited from prior version of complaint that was subsequently amended); *see also Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998) (holding that if certain facts or admissions from the original complaint are superseded by an amended pleading, "they cannot be considered by the court on a motion to dismiss the amended complaint"). Therefore, the original *Lassen* complaint is of no legal effect. In any event, mere reference to manuals would not be enough. The Owner's Manual would need to be integral to Plaintiff's claims, but it is not.

1149, 1159-60 (C.D. Cal. 2011); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013).  Moreover, "Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter.  All that is necessary is identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012).

In this case, Plaintiff avers *the who* (Hyundai and Kia), *the what* (the Keyless Fob system design of the Affected Vehicles lacks Auto-Off and poses a serious risk of carbon monoxide poisoning), *the when* (beginning at the time the Affected Vehicles were introduced to market and continuing through the time of sale of each vehicle), *the where* (pre-sale marketing materials), *the how* (failure to disclose the alleged safety defect known to Hyundai and Kia, which induced consumer purchases of Affected Vehicles), and *the why* (Hyundai had exclusive/superior knowledge of material information about a safety defect yet failed to disclose the Defect in order to induce Plaintiffs and Class Members to pay a higher price to purchase or lease its Affected Vehicles rather than competitors' vehicles or vehicles with physical keys).  *See, e.g.*, ¶ 184.  The Complaint further alleges that Hyundai was under a duty to disclose the Defect, but failed to do so.  *See* ¶¶ 183-84, 187, 210-11, 236-37.  Plaintiff also identifies and attaches a representative example of Hyundai's pre-sale marketing materials (*e.g.*, sales brochures) where the Defect could have been disclosed but was not.  *See* ¶¶ 46-48, Ex. 4.   Thus, Plaintiff pleads the circumstances of the omission with specificity, such that Hyundai's Rule 9(b) challenge is without merit.

### 2.    Plaintiff includes specific allegations against Hyundai consistent with Rule 9(b).

Hyundai erroneously contends that Plaintiffs' allegations against Defendants are improperly lumped together.  MTD at 16-17.  In truth, the Complaint adequately identifies the role of each Defendant as to the challenged omissions.  For example, the Complaint alleges that Hyundai (like Kia) adopted the same defective Keyless Fob

system for its own Hyundai Affected Vehicles and failed to disclose the safety Defect to purchasers of its Affected Vehicles in Hyundai's pre-sale marketing materials.  *See, e.g.*, ¶¶ 6, 40-54, Exs. 1, 4.[13]  Plaintiff does not run afoul of Rule 9(b) simply because the pleadings include some common allegations about the Hyundai/Kia Group or other automakers engaging in the same misconduct.  *See Peel*, 788 F. Supp. 2d at 1160 (Rule 9(b) satisfied where "although there are some general common allegations made against all of the Defendants, Plaintiffs have separate paragraphs making more specific allegations about the individually named Defendants and the named class representatives"); *see also Fields v. Wise Media, LLC*, 2013 WL 3187414, at *4 (N.D. Cal. June 21, 2013).

Hyundai also argues that Plaintiff has failed to plead knowledge of the safety defect with specificity under Rule 9(b).  Yet, Rule 9(b) expressly provides that the defendant's *knowledge* may be pled *generally*.  More importantly, Plaintiff does not seek to impute knowledge from other automakers.  Rather, Plaintiff avers that Hyundai knew or should have known about reports and complaints of incidents of personal injuries or deaths relating to similar keyless fob systems without Auto-Off. Plaintiff also identifies several independent and timely sources of Hyundai's pre-sale knowledge of the Defect (*see* Part F.2 below), such as NHTSA publications and Hyundai's partial implementation of Auto-Off in remote start applications, *which pre-date* Plaintiff's lease of an Affected Vehicle.

### 3.    The FAC adequately alleges how and why Hyundai's omissions are likely to mislead reasonable consumers.

Failure to disclose a material safety defect "is sufficient to show that members of the public are likely to be deceived under a reasonable consumer standard." *Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010).

---

[13] For each Hyundai Affected Vehicle listed in Exhibit 1 to the Complaint, Plaintiff alleges that "a driver can stop the vehicle, put it in park, exit with the Keyless Fob, and the vehicles' engine will still be running no matter how far away the driver goes from the car, and no matter how long the engine is running."  ¶ 6.

Hyundai contends that Plaintiff does not allege how or why the challenged omissions are misleading (MTD at 18), but the FAC is clear on this point. The failure to disclose an unreasonable safety defect – a Keyless Fob system operating without Auto-Off – misleads insofar as it is material to reasonable consumers like Plaintiff, who otherwise would not have purchased the Affected Vehicles or paid as much for them. *See*, *e.g.*, ¶¶ 27, 31, 36, 53, 183-84, 225, 251-52.[14]

Hyundai further contends that purchasers understand how to turn off the engines of the Affected Vehicles, and therefore, they were unlikely to be deceived by Hyundai's non-disclosure of the alleged safety defect. MTD at 19. In truth, "the average consumer would … expect the manufacturer to guarantee against unreasonable safety risks." *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011); *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) (same).[15] Plaintiff also alleges that reasonable consumers expect that the engines of the Affected Vehicles eventually turn off after the driver removes the Keyless Fob for a sufficient distance or period of time. ¶¶ 3-4, 6, 12-15, 27, 36, 183-84, 212-13. According to the pleadings, Hyundai eliminated the physical and psychological connection between the Keyless Fob and the Affected Vehicles. ¶¶ 12-13. Considering human factors analyses, reasonable consumers do not fully appreciate that the Keyless Fob plays no role in turning off the engine regardless of the distance or time for which the Fob is removed from the

---

[14] While Hyundai's cases on this point do not even involve a safety defect, they do recognize that safety issues are "material." *See, e.g., Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

[15] As detailed herein, the alleged Defect poses serious safety concerns (including the risk of death). Irrespective of safety concerns, however, "the average consumer would expect the manufacturer to disclose significant defects *of any nature* that arise within the warranty period." *Decker*, 2011 WL 5101705, at *4 (emphasis added); *see also Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 254 (2011); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 529 (C.D. Cal. 2012). Plaintiff's claims arise at the time of the initial lease (namely, *within* the warranty period). Consequently, the average consumer would expect Hyundai to disclose the Defect in this case, even without regard to the obvious safety concerns.

vehicle.  ¶¶ 3-6, 12-16.  Hyundai ignored these human factors in designing its Keyless Fob system for the Affected Vehicles.

Plaintiff further alleges that he was not aware at the time he leased an Affected Vehicle that the vehicles lacked Auto-Off and thereby posed a serious safety risk.  ¶¶ 41, 47, 51, 183-84.  Had Plaintiff known this, he alleges he would not have purchased the Affected Vehicle or paid as much for it.  ¶¶ 36, 39, 53-54, 183-84.  Therefore, the alleged Defect is material.  *See Falk*, 496 F. Supp. 2d at 1096 (plaintiffs adequately alleged that reasonable consumers would view defective speedometer as material; had they known of it, they would not have paid full price).  At bottom, Plaintiff's allegations that Hyundai failed to disclose a safety defect, and that Hyundai did so to induce consumers to pay a higher price, sufficiently state why the challenged omissions are misleading.  *See Kearney*, 2010 WL 8251077, at *7; *see also Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *13 (C.D. Cal. Oct. 3, 2014) ("[A] known safety hazard in a vehicle is a material fact that the manufacturer is obligated to disclose."); *cf. Asghari*, 42 F. Supp. 3d at 1326-28 (C.D. Cal. 2013) (concluding that plaintiffs adequately pled the "why" of an omission claim [to sell the class vehicles at a premium price and avoid warranty obligations] and the "how" [denying defect and asserting that high oil consumption was normal]); *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1190-91 (finding that plaintiffs sufficiently pled the "why" [to induce customers to purchase Toyota cars at the prices sold], and the "how" [instead of telling consumers, the defect was concealed from NHTSA investigations]).  In short, Plaintiff satisfies Rule 9(b).

## 4. The FAC properly pleads a duty to disclose.

As further discussed below, and consistent with Rule 9(b), Plaintiff amply alleges facts supporting a duty to disclose the Defect and associated safety risks.

**F.     Plaintiff Adequately Alleges That Hyundai Omitted Material Facts and Breached Its Duty to Disclose a Safety Defect**

In a nondisclosure case like this one, the plaintiff can state a cause of action when the defendant has a duty to disclose a material fact.  *See Falk*, 496 F. Supp. 2d at 1094-95.  A manufacturer generally has a duty to disclose an unreasonable safety defect.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836 (2006); *see also Keegan*, 838 F. Supp. 2d at 941.  Moreover, a duty to disclose arises in any of the following circumstances:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."  *Falk*, 496 F. Supp. 2d at 1095 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  Here, Plaintiff alleges that Hyundai has exclusive knowledge of a safety defect that was unknown to Plaintiff at the time of their lease of Affected Vehicles.[16]

**1.     Hyundai has a duty to disclose the Defect because it poses an unreasonable safety risk.**

"[T]he Ninth Circuit has recognized that California law imposes on manufacturers a general duty to disclose defects in their products relating to safety issues."  *Willis v. Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014).  In particular, Defendants are "under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use."  *Keegan*, 838 F. Supp. 2d at 941; *see also Kearney*, 2010 WL 8251077, at *6-7; *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010); *Falk*, 496 F. Supp. 2d at 1094.  That is, where a plaintiff alleges a real safety defect, he or she sufficiently pleads a duty to disclose for purposes of California's consumer protection statutes.  *See Asghari*, 42 F. Supp. 3d at 1330-31; *see also Keegan*, 838 F. Supp. 2d at 944;

---

[16] Plaintiff will not advance claims against Hyundai based on concealment; Plaintiff does not assert any claims based on affirmative misrepresentations.

*Kearney*, 2010 WL 8251077, at *6-7; *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009).

In this case, Plaintiff alleges that Hyundai failed to disclose a safety defect in the design of its Keyless Fob system.  According to the operative complaint, Hyundai adopted a Keyless Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure that the vehicle's engine does not continue to run indefinitely after being parked.  ¶¶ 12-13.  The Affected Vehicles have a dangerous propensity to cause carbon monoxide poisoning, creating an undue risk of injury and death.  ¶ 117.  The Defect exists because, without Auto-Off, the Affected Vehicle can emit dangerous (if not deadly) levels of carbon monoxide.  ¶ 130.  Affected Vehicles allow colorless and odorless carbon monoxide – the silent killer – to be emitted continually and unabated after the car is parked and the driver exits the vehicle.  ¶¶ 17, 28.  Those continuous noxious carbon monoxide emissions accumulate, especially in enclosed environments, and are dangerous to human health and potentially fatal.  *Id.*[17]

If Auto-Off were implemented, it would save lives and prevent serious injuries.  ¶ 174.  Since Hyundai has "a duty to disclose facts concerning safety issues," *Kearney*, 2010 WL 8251077, at *6, and since the alleged safety issues are certainly material to a reasonable consumer, Plaintiff sufficiently pleads a material breach of the duty to disclose for purposes of California's consumer protection statutes.

Nonetheless, Hyundai argues that Plaintiff's safety concerns are too speculative, analogizing this case to *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 990 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011) and *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *4 (C.D. Cal. Feb. 22, 2012).  MTD at 12-13.  The analogy to *Smith* and *Eisen* is flimsy.  In those cases, the courts recognized that the mere risk of

---

[17] Indeed, the FAC recognizes an array of deaths and severe personal injuries due to carbon monoxide poisoning from Keyless Fob vehicles.  ¶ 17.  To be clear, these deaths and severe injuries are not only due to the lack of a safety feature; they are due to the deadly design of a keyless ignition system that fails to stop ongoing toxic emissions.

getting stranded when a car fails to start is too speculative to constitute a safety risk. There were no allegations in those cases that consumers actually suffered personal injuries from the alleged defects, and each case presented an insufficient causal nexus between the alleged defect and the hypothetical safety issue.

To establish a duty to disclose based on a safety issue, the complaint may allege either:  (i) an instance of physical injury; or (ii) a sufficient nexus between the alleged defect and a safety issue.  *See Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1112 (C.D. Cal. 2015) (finding that plaintiffs sufficiently pled safety issue supporting duty to disclose based on possibility of fire as logical outcome of corroded exhaust parts);[18] *see also Apodaca*, 2013 WL 6477821, at *9 (ruling that complaint sufficiently alleged safety issue based on logical possibility of moisture affecting wiring); *Marsikian*, 2009 WL 8379784, at *6-7 (denying motion to dismiss where plaintiff alleged that air intake systems were susceptible to clogging, which plausibly could lead to engine failure).  The safety concerns here are all too real, as Hyundai knows from the various instances of personal injury already alleged in the operative complaint.  *See* ¶¶ 134-38, 149-57.  Additionally, Plaintiff alleges a sufficient nexus between the Defect (a Keyless Fob system designed in a manner that the engine continues to run indefinitely after the Fob is removed) and the safety issue (carbon monoxide poisoning from a running engine).[19]  The danger is not hypothetical here.

Simply put, Plaintiff adequately pleads that Hyundai omitted material facts, *i.e.*, a defect posing genuine safety concerns, which supports a duty to disclose.

---

[18] In *Williams*, this Court distinguished cases like *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1137 (N.D. Cal. 2013), in which the plaintiff had failed to explain how a lack of power supply could subsequently cause a computer fire.  *See id.* at 1111.

[19] In cases where drivers might get stranded because their cars won't start, the plaintiffs contemplated that the surrounding environment could pose safety risks.  By contrast, in this case, the Affected Vehicles themselves create a deadly hazard.  They emit carbon monoxide without abatement.  They do so in reasonably foreseeable circumstances.  While parking enclosures will exacerbate the severity of exposure to carbon monoxide, the hazard itself still comes from the Affected Vehicles.

**2. Hyundai also has a duty to disclose the lack of Auto-Off based on its exclusive knowledge thereof (*i.e.*, Hyundai is in a superior position to know about the Defect and the safety concerns associated with it).**

A defendant has a duty to disclose when it has exclusive knowledge of material facts not known to the plaintiffs, *i.e.*, when defendant is in a superior position to know such facts. *See, e.g., Falk*, 496 F. Supp. 2d at 1094-95; *see also Marsikian*, 2009 WL 8379784, at *6. The "exclusive knowledge" standard is not construed literally. For example, in *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012), the defendants argued that a "duty to disclose even a known, material fact does not exist unless the defendant has exclusive knowledge of that fact." But *Johnson* explained that "courts do not apply exclusivity with such rigidity. Rather, exclusivity is analyzed in part by examining whether the defendant had superior knowledge…."[20] And the district courts in *In re MyFord Touch Consumer Litigation*, *Elias v. Hewlett-Packard Co.*, *Falk*, and *Marsikian* have said the same.[21]

Here, Plaintiff alleges that Hyundai has a duty to disclose the Defect based on its exclusive knowledge thereof. ¶¶ 183-84, 210, 237. In other words, Hyundai is in a superior position to know about the lack of Auto-Off and related safety concerns. Hyundai's knowledge arises at least through: (1) certain news reports of injuries and deaths from Keyless Fob vehicles that lack Auto-Off (¶¶ 134-38); (2) recalls of similar Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 139-42); (3) patent

---

[20] *Id*. ("Since Defendant was in a *superior position* to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs.") (emphasis added).

[21] *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (explaining that "exclusivity is not applied with rigidity" and "is analyzed in part by determining whether the defendant has *superior knowledge*") (emphasis added); *Elias v. Hewlett-Packard Co.* ("*Elias II*"), 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (explaining that "courts look to whether the defendant had *superior knowledge* of the defect and do not rigidly require literal exclusivity") (emphasis added); *Falk*, 496 F. Supp. 2d at 1096-97 ("Since, as plaintiffs argue, GM 'was in a *superior position* to know' that its speedometers might fail, plaintiffs successfully state a CLRA claim for omission of a material fact which lay within GM's exclusive knowledge.") (emphasis added); *Marsikian*, 2009 WL 8379784, at *6 (allegations that defendant "was in a *superior position* to know" material facts support duty to disclose based on defendant's exclusive knowledge) (emphasis added).

applications covering Auto-Off systems (¶¶ 143-48); (4) personal injury lawsuit filings for Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 149-55); (5) consumer complaints filed with NHTSA regarding Keyless Fob vehicles (¶¶ 156-57); (6) review of non-binding NHTSA suggestions (¶¶ 158-62);[22] and (7) Hyundai's partial implementation of Auto-Off in remote-start applications (¶¶ 163-81).[23]

Hyundai contends that its knowledge of the Defect was not exclusive because the FAC alleges Hyundai acquired knowledge from *public* sources. MTD at 23. Actually, sporadic information on the Internet or in other media about the dangers of Keyless Fob vehicles does not undermine Hyundai's exclusive or superior knowledge. *See Asghari*, 42 F. Supp. 3d at 1327 n.74 ("Many customers would not have performed an internet search before beginning a [product] search. Nor were they required to do so."); *see also Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192 ("While prospective customers could have been tipped off to the possibility of [sudden unintended acceleration] by researching past complaints filed with NHTSA, many customers would not have performed such a search, nor would they be expected to."); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960 ("Even if the public – and therefore Plaintiffs – were aware of some problems with [the in-vehicle-dash control systems], that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems…."); *Elias II*, 2014 WL 493034, at *9 ("customers cannot 'be expected to seek facts which they h[ave] no way of knowing exist []'"); *Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at *8-9 (S.D. Cal. Mar. 18, 2015) (information from a magazine article cannot be imputed to

---

[22] On December 12, 2011, NHTSA published a Notice of Proposed Rulemaking, which has never been acted on or implemented, outlining the dangers of Keyless Fobs. NHTSA recognized that "driver[s] may not immediately know that the propulsion system has not been turned off" and drivers "may have died because of carbon monoxide poisoning from their vehicles." ¶ 161.

[23] Since at least 2012, Hyundai had knowledge of the need for Auto-Off, and worked on Auto-Off technology internally with remote-start vehicles in order to limit carbon monoxide emissions in pre-start situations, but Hyundai opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles. ¶¶ 175-81.

1
2
3

consumers).  At most, the nature of information in the public domain "is a question of fact not properly resolved on a motion to dismiss."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1230 (N.D. Cal. 2014).

4
5
6
7
8
9
10
11
12
13
14

Hyundai cites *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), wherein the parties disputed a Prius' fuel economy.  There, the court recognized that the vehicle's fuel economy was readily observable under daily driving conditions, and the topic was given national attention by the mainstream media.  *See id.*, at *8-9.  Unlike fuel economy, the Defect here is not readily observable to consumers in everyday driving conditions.  As pled, consumers only tend to learn of the Defect after exiting the vehicle with the Keyless Fob, while the vehicle is left running (¶¶ 6, 15, 39, 188-89).  They learn about it inadvertently by experiencing the Defect first-hand.  *See Falk*, 496 F. Supp. 2d at 1096-97.  Furthermore, despite sporadic reports over the years, Hyundai's Keyless Fob design has not been given national attention by the mainstream media.

15
16

In sum, Plaintiff adequately pleads that Hyundai has exclusive and/or superior knowledge of the Defect and associated safety risks.

17

### IV.   CONCLUSION

18

For the reasons above, the Court should deny Hyundai's motion to dismiss.

19
20

Dated:  April 18, 2016                HAGENS BERMAN SOBOL SHAPIRO LLP

21
22
23
24
25

By */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lee M. Gordon (SBN 174168)
Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
lee@hbsslaw.com
elaine@hbsslaw.com

LABATON SUCHAROW LLP

Martis Ann Alex (SBN 77903)
Daniel R. Leathers (*pro hac vice*)
Brian R. Morrison (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
malex@labaton.com
dleathers@labaton.com
bmorrison@labaton.com

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

_/s/ Steve W. Berman_
STEVE W. BERMAN