STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

MARTIS ANN ALEX (SBN 77903)
malex@labaton.com
DANIEL R. LEATHERS (*pro hac vice*)
dleathers@labaton.com
BRIAN R. MORRISON (*pro hac vice*)
bmorrison@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DANIEL CHESLER, MATTHEW KANG, CHRISTINE AND NICHOLAS MESSINA, and JANINE LOVUOLO, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA, INC. and KIA MOTORS AMERICA, INC., <br><br> Defendants. | No. 8:15-cv-01988-AB-MRW <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT KIA MOTORS AMERICA, INC.'S MOTION TO DISMISS** <br><br> Date:      June 27, 2016 <br> Time:      10:00 a.m. <br> Place:     Courtroom 4 <br> Judge:    Hon. André Birotte, Jr. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. BACKGROUND ................................................................. 3

III. ARGUMENT ..................................................................... 6

 A. Legal Standard ............................................................ 6

 B. Kia Cannot Skirt Page Limits by Incorporating Other Defendants' Arguments by Reference ........................... 7

 C. Kia's Argument Concerning Other Affected Vehicles Is Flawed and Is More Properly Addressed on a Motion for Class Certification ............................................................... 8

 D. Plaintiff Alleges Sufficient "Injury-in-Fact" to Confer Article III Standing .................................................................. 9

 E. Plaintiff's Claim for Unjust Enrichment is Properly Pled under Massachusetts Law ............................................ 12

 F. Kia's Purported "Disclosures" About the "Start/Stop" Button Have no Bearing on Plaintiff's Claims for Consumer Protection Law Violations or Fraud ........................................... 13

  1. The cited Owner's Manuals are not subject to judicial notice or incorporation by reference. ......................... 13

  2. The cited Owner's Manuals and signals do not constitute adequate "disclosures" as a matter of law. ............. 15

 G. Plaintiff's FAC Satisfies Federal Rule of Civil Procedure 9(b) ............. 16

 H. Plaintiff Adequately Alleges that Kia Had a Duty to Disclose a Safety Defect ............................................................. 17

  1. Kia's superior knowledge of the Defect triggered a duty to disclose. ........................................................ 17

  2. Kia had a duty to disclose the Defect because it is basic to the purchase transactions at issue. ...................... 19

 I. The Court Should Ignore Kia's Preemption and Primary Jurisdiction Argument ................................................. 20

IV. CONCLUSION ................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  2014 WL 4656608 (D. Mass. Sept. 12, 2014) .................................................... 17, 19

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 2990766 (N.D. Cal. July 20, 2012 ........................................................ 9

*Azco Biotech, Inc. v. Qiagen*,
  2013 WL 4500782 (S.D. Cal. Aug. 20, 2013) ....................................................... 14

*Barnes v. Sea Haw. Rafting, LLC*,
  2015 WL 9459893 (D. Haw. Dec. 22, 2015) ......................................................... 7

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ................................................................................ 12

*Boysen v. Walgreen Co.*,
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ....................................................... 10

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) .......................................................................... 8

*Calence, LLC v. Dimension Data Holdings, PLC*,
  222 F. App'x 563 (9th Cir. 2007) ......................................................................... 7

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ......................................................... 8, 9

*City of Bristol Pension Fund v. Vertex Pharms. Inc.*,
  12 F. Supp. 3d 225 (D. Mass. 2014) ..................................................................... 15

*Clancy v. Bromley Tea Co.*,
  308 F.R.D. 564 (N.D. Cal. 2013 ........................................................................... 8

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) .......................................................................................... 12

*Contreras v. Johnson & Johnson Consumers Cos., Inc.*,
  2012 WL 12096581 (C.D. Cal. Nov. 29, 2012) .................................................... 9

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ................................................................. 14

*Cuviello v. City & Cnty. of San Francisco*,
   940 F. Supp. 2d 1071 (N.D. Cal. 2013) ...................................................... 6

*Decker v. Mazda Motor of Am., Inc.*,
   2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) .......................................... 19

*Dysthe v. Basic Research LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011)....................................... 8, 9

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................... 7

*Falk v. GMC*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007).................................................... 16

*Fields v. Wise Media, LLC*,
   2013 WL 3187414 (N.D. Cal. June 21, 2013) ......................................... 17

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*,
   717 F. Supp. 2d 156 (D. Mass. 2010)...................................................... 18

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011)..................................................... 14

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015).................................................... 14

*Grodzitsky v. American Honda Motor Co., Inc.*,
   2013 WL 2631326 (C.D. Cal. June 12, 2013)........................................... 8

*Iannacchino v. Ford Motor Co.*,
   451 Mass. 623 (2008) .............................................................................. 12

*Kearney v. Hyundai Motor Am.*,
   2010 WL 8251077 (C.D. Cal. Dec. 17, 2010).......................................... 19

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012)...................................................... 19

*Kelley v. Crosfield Catalysts*,
   135 F.3d 1202 (7th Cir. 1998) ................................................................. 15

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................. 11

*Lass v. Bank of Am., N.A.*,
   695 F.3d 129 (1st Cir. 2012) ................................................................... 12

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................... 10

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................. 11

*Loumena v. Kennedy*,
   2015 WL 5963988 (N.D. Cal. Oct. 13, 2015) ...................................... 13

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009) ........................................ 21

*Miller UK Ltd. v. Caterpillar, Inc.*,
   292 F.R.D. 590 (N.D. Ill. 2013) .............................................................. 7

*Missud v. Oakland Coliseum Jt. Venture*,
   2013 WL 812428 (N.D. Cal. Mar. 5, 2013) .......................................... 14

*In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*,
   618 F. Supp. 2d 96 (D. Mass. 2009) ..................................................... 18

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................... 11

*Peel v. BrooksAmerica Mortg. Corp.*,
   788 F. Supp. 2d 1149 (C.D. Cal. 2011) ........................................... 16, 17

*Smith v. Zipcar, Inc.*,
   125 F. Supp. 3d 340 (D. Mass. 2015) ................................................... 16

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................. 7

*Swanson v. U.S. Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) ........................................................ 7, 12, 20

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................. 16

*Szulik v. State St. Bank & Trust Co.*,
   935 F. Supp. 2d 240 (D. Mass. 2013) ....................................................................... 12

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................................................... 9, 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................................................... *passim*

*Turnacliff v. Westly*,
   546 F.3d 1113 (9th Cir. 2008) ................................................................................ 13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................................... 14

*United States v. Zuno-Arce*,
   25 F. Supp. 2d 1087 (C.D. Cal. 1998), *aff'd*, 209 F.3d 1095 (9th Cir. 2000) ........... 7

*Vieira v. First Am. Title Ins. Co.*,
   668 F. Supp. 2d 282 (D. Mass. 2009) ..................................................................... 12

*Whitson v. Bumbo*,
   2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ........................................................ 10

*Williams v. Cnty. of Alameda*,
   26 F. Supp. 3d 925 (N.D. Cal. 2014) ...................................................................... 15

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ..................................................................................... 6

## Other Authorities

RESTATEMENT OF TORTS § 551 ...................................................................................... 18

# I.    INTRODUCTION

In the past several years alone, at least fourteen people have died and many more have sustained life-threatening injuries after parking their Keyless Fob-equipped cars in their garages.  Those vehicles were not equipped with an automatic engine shutoff to ensure that the vehicle's engine did not continue to emit deadly carbon monoxide long after the car was parked ("Auto-Off").  As a result, innocent drivers, families, and bystanders suffered from carbon monoxide poisoning.  Not one of those deaths or injuries would have occurred if the cars had been equipped with Auto-Off.

Unlike with traditional physical keys, where a driver is assured that the engine must be off if she parks the car and walks away with the key in hand, Keyless Fobs have nothing to do with shutting off the engine.  Consequently, unlike with traditional keys, drivers can and do park their cars and walk away with the Keyless Fob in hand, not realizing that the engine is still running and emitting deadly carbon monoxide. The life-threatening consequences of Keyless Fob systems designed without Auto-Off are amplified by the modern-day quiet engine technology that renders vehicles nearly silent even when the engine is turned on.

As detailed in Plaintiff's First Amended Class Action Complaint (the "FAC" or "Complaint"), Defendant Kia Motors America, Inc. ("Kia") knew about the serious safety risks associated with a *Keyless Fob system designed without Auto-Off* (the "Defect"), and knew that people were being killed and injured.  But Kia chose not to fix the Defect or to disclose its existence to consumers.  Plaintiff Janine LoVuolo ("Plaintiff") alleges that she leased a Keyless Fob vehicle from Kia that she otherwise would not have leased, or paid more for it than she otherwise would have paid, if Kia had disclosed the Defect.  She brings various state law claims seeking to recover actual economic damages for her overpayment, as well as injunctive relief to stop

Kia's ongoing deceptive marketing, to remedy the dangerous Defect, and to notify class members about the defective nature of their vehicles.[1]

Now, in its Motion to Dismiss, Kia disavows any responsibility for its non-disclosure of this serious safety Defect, and seeks to shift the blame to consumers, characterizing Plaintiff's claim as a "mundane example of driver forgetfulness."  Kia argues that Plaintiff lacks standing to assert claims on behalf of persons who purchased or leased other affected Kia models suffering from the same Defect, and fails to state any economic injury to support standing.  Furthermore, Kia argues that Plaintiff cannot assert an unjust enrichment claim.  Further still, Kia contends that the Owner's Manuals disclosed the defective nature of the vehicle, that Plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and that Kia had no duty to disclose the Defect.  Kia's motion, however, fails as a matter of law.

*First*, while Kia argues that Plaintiff cannot represent unnamed class members who have purchased or leased other affected Kia models, binding decisions from California federal courts make clear that this argument is better suited for the class certification stage.

*Second*, Kia's argument that Plaintiff lacks standing to assert any claims is wholly without merit.  Plaintiff alleges that she already suffered actual economic loss and therefore has Article III standing.  Kia's reliance on cases where the plaintiffs did not allege actual injury—physical or economic—is therefore unavailing.

*Third*, under Massachusetts law, Plaintiff can plead unjust enrichment in the alternative to other causes of action, particularly on a motion to dismiss.

*Fourth*, Plaintiff does not allege that she received or relied on the Kia Owner's Manual before leasing her vehicle, so the manual is of no consequence to her claims

---

[1] Plaintiffs Christine and Nicholas Messina have withdrawn from this litigation and are no longer putative class representatives.  *See* ECF No. 39. Plaintiffs therefore are no longer asserting claims under Connecticut law at this time.

here.  Equally important, the Owner's Manual is not properly considered on a motion to dismiss, and in any event, it simply does not disclose the Defect.  At most, the manual introduces a factual dispute that cannot be resolved at the pleadings stage.

*Fifth*, Plaintiff pled her omission-based claims with specificity under Rule 9(b).  She identifies the circumstances constituting fraud such that Kia can prepare an adequate answer.  Among other things, she describes the defective nature of the Keyless Fob ignition system, identifies the relevant time frame for the introduction of the affected vehicles, and carefully details Kia's failure to disclose the dangerous Defect in its pre-sale materials.

*Finally*, Plaintiff adequately alleges that Kia had a duty to disclose the lack of Auto-Off and related safety risk.  The duty to disclose exists here because the lack of Auto-Off poses a genuine safety risk and because Kia had superior knowledge of the Defect.

For these reasons and others described more fully below, the Court should deny Kia's motion in its entirety.

## II.    BACKGROUND

Keyless Fobs are marketed as the ultimate driving convenience.  Drivers can keep the Keyless Fobs in their pockets or bags and can start the car by pressing a button on the dashboard without having to fumble for a traditional physical key.  *See* ¶ 2.[2]  On cold or rainy days, Keyless Fobs are a convenience for drivers who wish to quickly enter the vehicle.  *Id*.

However, this convenience has resulted in deadly consequences.  Reasonable drivers, including Plaintiff, can misunderstand the role of the Keyless Fob in turning off the vehicle.  With traditional physical keys, once a driver removed the key from the ignition switch, the engine could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the vehicle, the engine was off.  But Keyless Fobs operate very

---

[2] Except where otherwise noted, references to "¶__" are to paragraphs in the First Amended Class Action Complaint (Dkt. No. 21).

differently.  Unlike with traditional keys, the Keyless Fob has nothing to do with turning off the engine.  ¶ 6.  Engines no longer turn off simply because the car is parked and the Fob is removed from the vehicle.  *Id.*  For Plaintiff's vehicle, as with other vehicles listed in Exhibit 1 to the Complaint (the "Affected Vehicles"), the driver can stop the vehicle, put it in park, and exit with the Keyless Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running.  *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money.  ¶ 8.  In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the vehicle price.  In either case, Plaintiff and other consumers pay additional money for the Keyless Fobs.  *Id.*  But this added convenience comes with a dangerous safety risk because Kia has failed to institute Auto-Off on the Affected Vehicles.  ¶ 12.

Tragically, as alleged in the Complaint, many drivers have not been fortunate enough to return to their cars to find the engines still running—instead, they were exposed to deadly levels of carbon monoxide that seeped into their homes after the engine continued to run in the garage.  Many families have been affected by carbon monoxide poisoning even in just the past six months.

A young mother parked her car in the garage and was awakened in the middle of the night by her thirteen-month-old son screaming.  She and her son were saved by emergency medical treatment, but both would have died from carbon monoxide poisoning had they stayed in their house just twenty minutes longer.  ¶ 18(a).

A father in Issaquah, Washington, parked the family minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning.  The seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber, and three of the responding firefighters also required medical attention.  ¶ 18(b).

Earlier, a college professor in Queens, New York, parked her car in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning.  Her partner was dead.  ¶ 21(b).

These and many other tragedies were caused by carbon monoxide poisoning from cars equipped with a Keyless Fob.  Unfortunately, they are not isolated stories.  The Complaint details *at least* fourteen wholly avoidable deaths and many more serious injuries—all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had Auto-Off.  ¶ 17.[3]

Since the time that Kia first marketed the Affected Vehicles, and at the time Plaintiff leased an Affected Vehicle, the Keyless Fob system lacked Auto-Off and posed a serious risk of carbon monoxide poisoning.  ¶ 184.  At the same time, Kia was in a superior position to know about the lack of Auto-Off in its Affected Vehicles and the unreasonable safety hazard created by the lack of Auto-Off.  ¶¶ 183-84.  As alleged in the Complaint, Kia's superior knowledge of the Defect arises through a variety of sources that include select news reports, recalls, patent applications, personal injury lawsuit filings, NHTSA complaints, non-binding NHTSA proposals, and Kia's partial implementation of Auto-Off.  ¶¶ 134-81.  In fact, Kia installed an automatic shut-off system for many of its remote-start vehicles to shut off the engine if the vehicle is left running in pre-start mode in order to limit deadly carbon monoxide emissions.  ¶¶ 175-81.[4]  Kia failed to disclose the lack of Auto-Off and related safety risk to consumers, inducing consumers to purchase or lease one of the Affected Vehicles and to pay a premium price in the process.  ¶ 184.

---

[3] Plaintiff's counsel have learned of at least five more deaths since filing the initial Class Action Complaint in November 2015, bringing the total number of avoidable deaths to nineteen.  If the Court requests or requires further allegations about the safety hazard posed by the Defect, Plaintiff's counsel could and would detail the circumstances of these additional deaths.

[4] In a remote-start vehicle, a driver can use an electronic fob to start the engine remotely to warm or cool the vehicle before entering.

On or around July 25, 2015, Plaintiff leased a 2015 Kia Optima, not knowing that her vehicle lacked Auto-Off.  ¶ 85.  None of the pre-sale materials that she reviewed warned her that her vehicle lacked Auto-Off or that the lack of Auto-Off poses a serious safety risk.  ¶ 91.  Although Plaintiff has been fortunate enough not to suffer carbon monoxide poisoning, she nevertheless has experienced the Defect—she has parked her vehicle, removed the Keyless Fob, walked away, and later discovered the vehicle's engine was still running.  ¶ 93.  Plaintiff would not have leased or would have paid less for the vehicle had she known about the lack of Auto-Off and related safety risk.  ¶ 98.

### III.   ARGUMENT

**A.   Legal Standard**

Kia's Motion to Dismiss the Complaint fails as a matter of law, and the Court should deny the motion in its entirety.  A motion to dismiss challenges the legal sufficiency of the claims alleged.  While the complaint must plead enough facts to render the claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).[5]  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent omission claims asserted by Plaintiff "can succeed without the same level of specificity required by a normal fraud claim."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig. ("Unintended Acceleration MDL")*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (Rule 9(b) requirements relaxed

---

[5] Unless otherwise indicated, all internal citations and quotation marks are omitted.

for fraudulent omission claims "because 'requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission'") (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009)).

As explained more fully below, Plaintiff has alleged sufficient factual allegations that "plausibly suggest an entitlement to relief." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[6]

### B. Kia Cannot Skirt Page Limits by Incorporating Other Defendants' Arguments by Reference

Kia did not request from Plaintiff or the Court leave to exceed the 25-page briefing limit. Instead, Kia skirts the page limit by incorporating by reference other Defendants' arguments. The Ninth Circuit has expressly rejected this tactic. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996) (holding that trial court properly struck party's incorporations where party "incorporated by reference 69 additional pages of argument" in its brief, and upholding sanctions); *see also Barnes v. Sea Haw. Rafting, LLC*, 2015 WL 9459893, at *2 n.4 (D. Haw. Dec. 22, 2015) ("There is no authority for [this party's] attempt to incorporate prior briefing instead of articulating and supporting with evidence his arguments in the instant motion."); *Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 592-93 (N.D. Ill. 2013) (noting that "[o]ne of the frequently employed devices to skirt a limit on the size of briefs is adoption by reference to other filings or documents"); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (upholding district court's refusal to "consider [an] argument contained in prior briefing … in violation of local page limits"); *United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal.

---

[6] Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2). Plaintiff respectfully requests leave to amend if necessary.

1998) (rejecting defendant's "attempts to 'incorporate by reference' co-defendant['s] submission on [the] issue"), *aff'd*, 209 F.3d 1095 (9th Cir. 2000).

Kia's attempt to incorporate other Defendants' arguments should be rejected, and Kia should instead be restricted to its own legal arguments in its motion.

## C. Kia's Argument Concerning Other Affected Vehicles Is Flawed and Is More Properly Addressed on a Motion for Class Certification

Kia argues that the Complaint must be dismissed as to all Kia Affected Vehicles other than the model Plaintiff actually leased, though Plaintiff alleges that each vehicle suffers from precisely the same Defect. ¶ 6. The case law does not support Kia. In fact, the Court rejected the same argument advanced here just three years ago in a vehicle defect class action. In *Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 2631326, at *4 (C.D. Cal. June 12, 2013), the defendant argued that the plaintiffs lacked standing "to sue over products they did not purchase" where the plaintiffs sought to represent unnamed class members who purchased or leased different vehicle models suffering from the same defective window regulators. The Court disagreed, concluding that the argument was "ill-suited to a motion to dismiss," and explaining that it was better suited for the class certification stage. *Id.*

The weight of authority confirms that Kia's argument is premature, particularly since the Affected Vehicles each suffer from the same Defect. *See Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 569, 571 (N.D. Cal. 2013) (rejecting *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), and concluding that "[d]eciding at the pleading stage that a plaintiff cannot represent a class who purchased any different products than the plaintiff seems unwarranted"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."). Other California federal courts have also explained that, so long as

there is "sufficient similarity between the products [the named plaintiffs] did purchase and those that they did not," the argument is better addressed at the class certification stage. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (refusing to follow reasoning of *Dysthe v. Basic Research LLC*, 2011 WL 5868307 (C.D. Cal. June 13, 2011), and finding that even though food products at issue may have different ingredients, plaintiffs challenged "the same basic mislabeling practice across different product flavors").[7]  Undeniably, the Keyless Fob system on each Affected Vehicle is substantially similar if not identical, and Plaintiff challenges the same omissions regardless of the vehicle model.

As a result, at the pleadings stage, this Court should reject Kia's motion to dismiss other Affected Vehicle models from the case.

**D.  Plaintiff Alleges Sufficient "Injury-in-Fact" to Confer Article III Standing**

Kia argues that Plaintiff has not sufficiently alleged injury-in-fact to confer Article III standing.  The argument is without merit, particularly at this stage of the litigation where "general factual allegations of injury resulting from the defendant's conduct may suffice."  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1160.

Plaintiff alleges that she has suffered actual economic losses in that she overpaid for the vehicle because the price of the defective Keyless Fob was built into the vehicle's lease price.  *See* ¶ 98.  The Complaint is replete with allegations that the Defect has diminished the value of Plaintiff's vehicle.  *See* ¶ 39 ("because defective vehicles are worth less than vehicles without defects, Plaintiffs' Affected Vehicles have diminished in value"); ¶ 196 ("Plaintiffs have … incurred a diminution in the value of his/her Affected Vehicle as a result of the Defect"); *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("A vehicle with a defect

---

[7]  Kia relies on *Carrea* and *Dysthe v. Basic Research LLC*, 2011 WL 5868307 (C.D. Cal. June 13, 2011), both of which have been more recently discredited by California federal courts, as described above.  Kia's reliance on *Contreras v. Johnson & Johnson Consumers Cos., Inc.*, 2012 WL 12096581 (C.D. Cal. Nov. 29, 2012), goes against the weight of authority on this issue in California federal courts, and has only been cited by one decision in the Southern District of Florida.

is worth less than one without a defect."). Because Plaintiff alleges that she already suffered economic losses, she necessarily has Article III standing. Indeed, the Court in the *Unintended Acceleration MDL* expressly held that "'overpayment, loss in value, or loss of usefulness' is sufficient to confer standing," 754 F. Supp. 2d at 1162.

Kia relies heavily on *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014), a decision that is wholly off point. The plaintiffs there brought various consumer claims against Toyota concerning an automatic pre-collision braking function, but did not allege that they or any other consumers experienced a problem with the braking system. *Id.* at 967-68. The plaintiffs merely pointed to a third-party study opining that even though the vehicle was rated a "Top Safety Pick," the pre-collision braking function did not qualify for the "advanced" rating. *Id.* at 969. The theoretical defect in *Lee*, which the plaintiffs did not allege caused economic, physical or any other injury to themselves or anyone else, is a far cry from this litigation where Plaintiff alleges a safety defect that has resulted in at least 14 deaths and many more serious injuries. As the Court explained in the *Unintended Acceleration MDL*, 790 F. Supp. 2d at 1166, as long as Plaintiffs do not simply allege that their "vehicles are 'defective,'" but rather offer detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage."

Kia also relies on two other unpublished decisions from cases where the plaintiffs did not experience the alleged defect. *See Whitson v. Bumbo*, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) (finding no standing where plaintiff had not experienced any manifestation of defect and had not claimed that she "actually used or was harmed by any defect" in child seat); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (plaintiff failed to allege "that any person has ever been injured by the products"). These "no-injury" cases have no bearing on the economic loss suffered by Plaintiff. In any event, unlike in the cases cited by Kia, Plaintiff here actually experienced a manifestation of the Defect—she found her

vehicle running despite parking the vehicle and removing the Keyless Fob.  *See* ¶ 93.
Plaintiff also alleges her reasonable concern that she will fall victim to carbon
monoxide poisoning as have so many others.  ¶ 94.  The *Unintended Acceleration
MDL* Court explicitly stated that "[a]n injury-in-fact may simply be the fear or anxiety
of future harm."  754 F. Supp. 2d at 1163.

Kia's citation to *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D.
Cal. 2013), does not undercut Plaintiff's injury-in-fact.[8]  There, the plaintiffs alleged
that LinkedIn breached its membership agreements by failing to provide a greater
level of data security.  *Id.* at 1093.  Because the applicable agreements did not promise
advanced data security, and since the plaintiffs did not allege any other independent
injuries, the court concluded that the plaintiffs lacked standing.  *Id.*  The *LinkedIn*
decision was more recently distinguished by the court in *Opperman v. Path, Inc.*, 87 F.
Supp. 3d 1018, 1037 (N.D. Cal. 2014), where the plaintiffs claimed that Apple "sold
them devices that made it possible for third parties to access and copy [the plaintiffs']
address books."  The court limited *LinkedIn*, explaining that the *LinkedIn* decision
must be narrowly read and that the plaintiffs had standing so long as they alleged
"something more" than a mere breach of contract.  *Id.* at 1039-40.  Plaintiff's claim
here does allege "something more"—that she overpaid for the vehicle with a defective
Keyless Fob ignition system, that there is a dangerous safety defect diminishing the
value of her vehicle, and that she is reasonably concerned about future episodes of
carbon monoxide poisoning.

Kia also suggests in a single sentence that Plaintiff lacks standing because she
has not alleged an imminent or concrete injury, nor can her injury be traceable to Kia's

---

[8] Kia's passing reference to *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011),
is confusing and fares no better.  Unlike Plaintiff here, the *Kwikset* plaintiffs did not
claim that the products were defective or that the manufacturer omitted material
information about a dangerous safety defect; rather, they claimed that the
manufacturer made misrepresentations about the products being "Made in America."
*Id.* at 328-29.  *Kwikset* thus has no bearing on this case where Plaintiff alleges that Kia
breached its duty to disclose a dangerous safety defect.

conduct.  Kia's attempt to incorporate by reference Nissan's argument on this point—a clear effort to skirt the page limits by including six additional pages of briefing—is wholly improper and should be rejected.[9]  *See Swanson*, 87 F.3d at 343, 345; *supra* at Section III.B.

In sum, Plaintiff alleges injury-in-fact sufficient to confer standing.

**E.    Plaintiff's Claim for Unjust Enrichment is Properly Pled under Massachusetts Law**

Federal courts applying Massachusetts law have held that a plaintiff can plead unjust enrichment in the alternative to other causes of action, even though the damages are "mutually exclusive."  *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *see also Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294-95 (D. Mass. 2009) (stating that Fed. R. Civ. P. 8(d) "permits [p]laintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if [p]laintiffs only can recover under one of these theories").  Kia argues to the contrary based in part on *Szulik v. State St. Bank & Trust Co.*, 935 F. Supp. 2d 240, 274 (D. Mass. 2013).  Tellingly, in *Szulik*, the district court expressly held under Massachusetts law that "[a]lthough the existence of a contractual relationship may ultimately bar the unjust enrichment claim, it does not warrant the dismissal of that claim" on a motion to dismiss. *Id.*[10]

---

[9] Kia's fleeting references to *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) and *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) both fall flat.  Unlike in the case at hand, the plaintiffs in *Birdsong* and *Clapper* did not allege that anyone had been injured by the claimed defects or that they experienced the conduct complained of.

[10] Kia's citation to the earlier appellate decision in *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 628 (2008), is misleading.  The plaintiffs there appealed from the dismissal of the complaint on several grounds, but did not appeal the dismissal of the unjust enrichment claim.  The appellate court therefore did not address the merits of the claim or the dismissal.

**F.     Kia's Purported "Disclosures" About the "Start/Stop" Button Have no Bearing on Plaintiff's Claims for Consumer Protection Law Violations or Fraud**

At the outset, Kia builds up and tears down a straw-man argument. *First*, Kia posits that Plaintiff is claiming to be unaware of how the "Start/Stop" button works on Affected Vehicles. Motion to Dismiss ("MTD") at 13. *Then*, Kia attacks the imagined claims. But in reality Plaintiff never made such claims. Of course she is aware that pushing the "Start/Stop" button can stop the vehicle's engine. That simply does not inform anyone about what happens after the Keyless Fob is removed from the vehicle while the engine is still running. All Keyless Fob vehicles have "Start/Stop" buttons. Some have Auto-Off, but the Affected Vehicles do not.[11]

**1.     The cited Owner's Manuals are not subject to judicial notice or incorporation by reference.**

Kia maintains that the cited Owner's Manuals are properly before the Court because: (i) the Court may take judicial notice of them; or (ii) the FAC incorporates them by reference. MTD at 13. For the reasons set forth in Plaintiff's concurrently-filed Opposition to Kia's Request for Judicial Notice, and as set forth below, the cited materials are *not* the proper subject of judicial notice and they are *not* incorporated by reference.

Regarding judicial notice, Kia fails to show that the cited materials come from *sources whose accuracy cannot reasonably be questioned* (as required under Fed R. Evid. 201(b)), particularly since Kia does not qualify as such a source.[12] *See Loumena v. Kennedy*, 2015 WL 5963988, at *8 (N.D. Cal. Oct. 13, 2015) (a party with an interest in the outcome of a case "is not a source whose accuracy cannot reasonably be questioned"); *see also Turnacliff v. Westly*, 546 F.3d 1113, 1120 (9th Cir. 2008).

---

[11] Consider remote-start vehicles. They too have a "Start/Stop" button. If the remotely started engine is left running, the vehicle will shut off automatically after a predetermined period of time.

[12] One of the websites referenced by Kia hosts Canadian car manuals, and the other referenced website claims to house over 78,000 car manuals, most of which are in the Chinese language. *See* Dkt. No. 34-5, at 2 (citing to "cdn.dealereprocess.com" and "carmanuals2.com").

1   Likewise, Kia fails to show that the manuals are available from some independent

2   public source whose accuracy cannot reasonably be questioned.  *See Azco Biotech,*

3   *Inc. v. Qiagen*, 2013 WL 4500782, at *3 n.5 (S.D. Cal. Aug. 20, 2013) (finding that

4   party websites generally "are not the sorts of 'sources whose accuracy cannot

5   reasonably be questioned'"); *see also Gerritsen v. Warner Bros. Entm't Inc.*, 112 F.

6   Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (same).  Unlike in the cases relied on by

7   Kia, Plaintiff here objects to the request for judicial notice and Plaintiff does not allege

8   claims based on the cited Owner's Manuals.

9        Moreover, district courts should not incorporate a document by reference unless

10   it is "*integral*" to the operative complaint and "*there are no disputed issues as to the*

11   *document's relevance.*"  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.

12   2010) (emphasis added).  "[T]he mere mention of the existence of a document is

13   insufficient to incorporate the contents of a document."  *Id.*; *see also United States v.*

14   *Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).  Incorporation by reference is

15   particularly inappropriate in a deceptive marketing case where the plaintiffs have not

16   alleged that they were misled by the documents at issue, or even saw the documents,

17   prior to purchasing the product.  *See Missud v. Oakland Coliseum Jt. Venture*, 2013

18   WL 812428, at *11 (N.D. Cal. Mar. 5, 2013).

19        The cited Owner's Manuals are not "pre-sale" materials, and Kia would be hard

20   pressed to contend otherwise (*i.e.*, a typical consumer does not review an owner's

21   manual before purchasing a vehicle).  Plaintiff does not refer to the Owner's Manuals

22   in the operative complaint, much less *extensively*.  The cited manuals are simply *not*

23   *integral* to Plaintiff's claims, since Plaintiff does not allege that she was misled by the

24   Owner's Manual or even exposed to it before leasing an Affected Vehicle.  *See id.*; *see*

25   *also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011) (rejecting

26   incorporation by reference of certain Help Center pages on Facebook since "it does

27   not follow that a member would necessarily see the other Help Center pages Facebook

28   submits").  Kia's argument that it generally allows dealerships to make manuals

available to potential consumers does not undermine this point. MTD at 15. In fact, Plaintiff disputes that the manuals are relevant at all. Consequently, the operative complaint does not *necessarily rely* on the manuals, and the Court should not consider such materials on a motion to dismiss.

In Kia's view, the FAC incorporates *every document in the world* in which Kia believes there could be some sort of a purported disclosure. MTD at 15. Surely it overshoots the mark. At this juncture, the relevant sources of disclosure are limited to pre-sale marketing materials to which Plaintiff was exposed; the cited Owner's Manual is not among those materials.[13]

### 2.   The cited Owner's Manuals and signals do not constitute adequate "disclosures" as a matter of law.

Where plaintiffs are given full and fair disclosure of all material facts in advance of a disputed transaction, that disclosure may preclude claims based on omission of those same facts under Massachusetts law. *See, e.g.*, *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225 (D. Mass. 2014). But this common sense principle is of no help to Kia because (as discussed above) the cited Owner's Manual is not the proper subject of this motion to dismiss, it is not a pre-sale disclosure, and fundamentally, it does not disclose the lack of Auto-Off or the associated safety risk.

---

[13] Kia relies on allegations from the original *Lassen* complaint that are *not included* in the First Amended Complaint. MTD at 15. "However, it is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading." *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014) (refusing to consider facts cited from prior version of complaint that was subsequently amended); *see also Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998) (holding that if certain facts or admissions from the original complaint are superseded by an amended pleading, "they cannot be considered by the court on a motion to dismiss the amended complaint"). Therefore, the original *Lassen* complaint is of no legal effect. In any event, mere reference to manuals would not be enough. The Owner's Manual would need to be integral to Plaintiff's claims, but it is not.

1

### G.    Plaintiff's FAC Satisfies Federal Rule of Civil Procedure 9(b)

2

Rule 9(b) requires that allegations of fraud be "state[d] with particularity."

3

However, "omissions" need not be pled with the same degree of specificity.  *See Falk*

4

*v. GMC*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (time, place, and content of

5

omissions need not be pled with same specificity as affirmative misrepresentations);

6

*see also Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1159-60 (C.D.

7

Cal. 2011); *accord Smith v. Zipcar, Inc.*, 125 F. Supp. 3d 340, 344 n.3 (D. Mass. 2015)

8

(plaintiff's allegation that defendant was under a duty to disclose material facts at the

9

time of the relevant transactions "but failed to do so has the requisite level of

10

specificity under Rule 9(b)").  The purpose of Rule 9(b) is to require a plaintiff to be

11

"specific enough to give defendants notice of the particular misconduct which is

12

alleged to constitute the fraud charged so that they can defend against the charge and

13

not just deny that they have done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d

14

756, 764 (9th Cir. 2007).

15

In this case, Plaintiff avers *the who* (Kia and Hyundai), *the what* (the Keyless

16

Fob system design of the Affected Vehicles lacks Auto-Off and poses a serious risk of

17

carbon monoxide poisoning), *the when* (beginning at the time the Affected Vehicles

18

were introduced to market and continuing through the time of sale of each vehicle),

19

*the where* (pre-sale marketing materials), and *the how* (failure to disclose the alleged

20

safety defect known to Kia and Hyundai, which induced consumer purchases).  *See,*

21

*e.g.*, ¶ 184.  The FAC further alleges that Kia was under a duty to disclose the Defect,

22

but failed to do so.  *See* ¶¶ 183-84, 210, 237, 307.  Plaintiff also identifies and attaches

23

a representative example of Kia's pre-sale marketing materials (*e.g.*, sales brochures)

24

where the Defect could have been disclosed but was not.  *See* ¶¶ 90-92, Ex. 7.  Thus,

25

Plaintiff pleads the circumstances of the challenged omission with specificity, such

26

that Kia's Rule 9(b) challenge is without merit.

27

Kia erroneously contends that Plaintiff's allegations against Kia and Hyundai

28

are improperly lumped together.  MTD at 18.  In truth, the FAC adequately identifies

the role of each Defendant as to the challenged omissions. For example, the FAC alleges that Kia (like Hyundai) adopted the same defective Keyless Fob system for its own Kia Affected Vehicles and failed to disclose the safety defect to purchasers of its Affected Vehicles in Kia's pre-sale marketing materials. *See*, *e.g.*, ¶¶ 6, 84-98, Exs. 1, 7.[14] Plaintiff does not run afoul of Rule 9(b) simply because the pleadings include some common allegations about the Hyundai/Kia Group engaging in the same misconduct. *See Peel*, 788 F. Supp. 2d at 1160 (Rule 9(b) satisfied where "although there are some general common allegations made against all of the Defendants, Plaintiffs have separate paragraphs making more specific allegations about the individually named Defendants and the named class representatives"); *see also Fields v. Wise Media, LLC*, 2013 WL 3187414, at *4 (N.D. Cal. June 21, 2013).

Kia also contends that Plaintiff does not allege how the challenged omissions misled her, but the FAC is clear on this point. The failure to disclose an unreasonable safety defect misleads because the information is material to reasonable consumers like Plaintiff, who but for the non-disclosures would not have purchased the Affected Vehicles or paid as much for them. *See*, *e.g.*, ¶¶ 27, 31, 36, 97, 183-84, 225, 251-52. In short, Plaintiff satisfies Rule 9(b).

**H.    Plaintiff Adequately Alleges that Kia Had a Duty to Disclose a Safety Defect**

**1.    Kia's superior knowledge of the Defect triggered a duty to disclose.**

In a nondisclosure case, the plaintiff can state a cause of action when the defendant has a duty to disclose an alleged defect. Under Massachusetts law, the defendant's "*position of superior knowledge* with respect to the plaintiff trigger[s] a duty to disclose." *See AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2014 WL 4656608, at *10 (D. Mass. Sept. 12, 2014) (emphasis added) (denying

---

[14] For each Kia Affected Vehicle listed in Exhibit 1, Plaintiff alleges that "a driver can stop the vehicle, put it in park, exit with the Keyless Fob, and the vehicles' engine will still be running no matter how far away the driver goes from the car, and no matter how long the engine is running." ¶ 6.

motion to dismiss where plaintiff sufficiently alleged that defendant had superior knowledge of defective voltage regulator); *see also First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010) ("[Defendant's] position of 'superior knowledge' with respect to the plaintiff also triggered a duty to disclose" information about defect in bullet-proof vests); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 109 (D. Mass. 2009).[15]

Plaintiff alleges that Kia had a duty to disclose the Defect based on its exclusive or superior knowledge thereof.  ¶¶ 183-84, 210, 237, 307.  In other words, Kia is in a superior position to know about the lack of Auto-Off and related safety concerns. Kia's knowledge arises at least through:  (1) certain news reports of injuries and deaths from Keyless Fob vehicles that lack Auto-Off (¶¶ 134-38); (2) recalls of similar Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 139-42); (3) patent applications covering Auto-Off systems (¶¶ 143-48); (4) personal injury lawsuit filings for Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 149-55); (5) consumer complaints filed with NHTSA regarding Keyless Fob vehicles (¶¶ 156-57); (6) review of non-binding NHTSA suggestions (¶¶ 158-62);[16] and (7) Kia's partial implementation of Auto-Off in remote-start applications (¶¶ 163-81).[17]

Significantly, Kia has not disputed that it has superior knowledge of the Defect and associated safety risks; Kia's superior knowledge gives rise to its duty to disclose under Massachusetts law.

---

[15] Kia's view notwithstanding, RESTATEMENT OF TORTS § 551 does not delineate every circumstance in which a duty to disclose may arise under Massachusetts law.

[16] On December 12, 2011, NHTSA published a Notice of Proposed Rulemaking, which has never been acted on or implemented, outlining the dangers of Keyless Fobs. NHTSA recognized that "driver[s] may not immediately know that the propulsion system has not been turned off" and drivers "may have died because of carbon monoxide poisoning from their vehicles."  ¶ 161.

[17] Since at least 2012, Kia had knowledge of the need for Auto-Off, and worked on auto-off technology internally with remote-start vehicles in order to limit carbon monoxide emissions in pre-start situations, but Kia opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles.  ¶¶ 175-81.

### 2.      Kia had a duty to disclose the Defect because it is basic to the purchase transactions at issue.

Under Massachusetts law, a defendant also has a duty to disclose a fact that "is *basic* to, or goes to the essence of, the transaction." *AcBel Polytech, Inc.*, 2014 WL 4656608, at *10 (emphasis added). In this case, the existence of a dangerous safety defect is *basic* to the purchase or lease of a vehicle.[18]

Plaintiff alleges that Kia failed to disclose a safety defect in the design of its Keyless Fob system. According to the FAC, Kia adopted a Keyless Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure that the vehicle's engine does not continue to run indefinitely after being parked. ¶ 12. The Affected Vehicles have a dangerous propensity to cause carbon monoxide poisoning, creating an undue risk of injury and death. ¶ 117. The Defect exists because, without Auto-Off, the Affected Vehicles can emit dangerous (if not deadly) levels of carbon monoxide. ¶ 130. Affected Vehicles allow colorless and odorless carbon monoxide— the silent killer—to be emitted continually and unabated after the car is parked and the driver exits the vehicle. ¶¶ 17, 28. Those continuous noxious emissions accumulate, especially in enclosed environments, and are dangerous to human health and potentially fatal. *Id.* If Auto-Off were implemented, it would save lives and prevent serious injuries. ¶ 174.

Plaintiff further alleges that reasonable consumers expect that Affected Vehicles are safe and that the engines eventually turn off after the driver removes the Keyless Fob for a sufficient distance or period of time. ¶¶ 3, 6, 12-16, 213. According to the pleadings, Kia eliminated the physical and psychological connection between the Keyless Fobs and the Affected Vehicles. ¶¶ 12-13. Human factors analyses confirm

---

[18] *Cf. Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011) ("the average consumer would … expect the manufacturer to guarantee against unreasonable safety risks"); *Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *6-7 (C.D. Cal. Dec. 17, 2010) (automaker has "a duty to disclose facts concerning 'safety issues'"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 941 (C.D. Cal. 2012) (Defendants are "under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use").

that reasonable consumers do not fully appreciate that the Keyless Fob plays no role in turning off the engine regardless of the distance or time for which the Fob is removed from the vehicle.  ¶¶ 13-16.  Kia ignored these human factors in designing its Keyless Fob system for the Affected Vehicles.  ¶¶ 12-13, 162.  Further still, Plaintiff alleges that she was not aware when she leased an Affected Vehicle that the vehicle lacked Auto-Off and thereby posed a real safety risk.  ¶¶ 85, 93-95, 97.  Had she known this, she alleges she would not have leased the vehicle or paid as much for it.  ¶¶ 97.  Consequently, the FAC alleges that reasonable consumers were unaware of the Defect or the safety risk associated with it, and that Kia knew this but failed to disclose it.  ¶¶ 3, 134-84; *see also* Section H.1 above.  Kia denies that it knew this and asserts that it made certain post-sale disclosures (MTD at 22), but at most, Kia raises disputed issues of fact that are unsuitable for resolution on a motion to dismiss.

Accordingly, Plaintiff sufficiently pleads that Kia had a duty to disclose the Defect; such a safety defect was *basic* to her lease of an Affected Vehicle.[19]

## I.   The Court Should Ignore Kia's Preemption and Primary Jurisdiction Argument

Kia makes a throw-away argument in a single paragraph that Plaintiff's request for injunctive relief is barred by preemption and primary jurisdiction.  Kia's attempt to incorporate by reference Toyota's brief on this issue is improper and should be rejected.  Kia did not request from Plaintiff or the Court leave to exceed the 25-page briefing limit, but it now skirts the page limits by attempting to annex six additional pages of arguments on preemption from Toyota's brief.  The Ninth Circuit has expressly rejected this tactic.  *See Swanson*, 87 F.3d at 343, 345; *see also supra* Section III.B.

In any event, California federal court decisions that Kia does not cite have consistently refused to dismiss requests for injunctive relief in vehicle defect class

---

[19] Plaintiff does not contest dismissal of the Tenth Cause of Action for Breach of the Implied Warranty of Merchantability under Massachusetts law.

actions and have declined to apply primary jurisdiction. *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1198-1200 (concluding that "a 'real and substantial possibility' of conflict is insufficient to warrant dismissal on preemption grounds," and that claims did not warrant application of primary jurisdiction); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *9 (C.D. Cal. May 4, 2009) (same).

## IV. CONCLUSION

For the reasons above, the Court should deny Kia's Motion to Dismiss.

Dated:  April 18, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Lee M. Gordon (SBN 174168)
Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
lee@hbsslaw.com
elaine@hbsslaw.com

LABATON SUCHAROW LLP

Martis Ann Alex (SBN 77903)
Daniel R. Leathers (*pro hac vice*)
Brian R. Morrison (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
malex@labaton.com
dleathers@labaton.com
bmorrison@labaton.com

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ Steve W. Berman
STEVE W. BERMAN